# STATE OF MICHIGAN

# COURT OF APPEALS

<table>
<tr><td>In re THOMPSON, Minors.</td><td>UNPUBLISHED<br>September 10, 2015<br><br>No. 324060<br>Genesee Circuit Court<br>Family Division<br>LC No. 14-130960-NA</td></tr>
</table>

Before: TALBOT, C.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals as of right from the trial court order terminating her parental rights to two of her minor children, ET and AT, pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), and (k)(*v*). We affirm.

## I. FACTS

Respondent is the mother of four children. Two of these children died as infants while in respondent's care. ET is respondent's oldest child. Her second child, JT, died 18 days after his birth in 2006. JT died while sleeping in the same bed as respondent. The Department of Health and Human Services (DHHS) investigated the matter, which was substantiated for physical neglect. AT is respondent's third child. At six months of age, AT weighed only 11 pounds. DHHS again investigated respondent and found that AT was medically neglected. In the fall of 2008, respondent was provided with a variety of services and referrals aimed at correcting her parenting deficiencies.

Respondent's fourth child, IT, was born in the fall of 2013. Approximately three weeks after his birth, respondent returned to her apartment with IT near midnight. IT was in a car seat. Because the apartment was cold, respondent turned the heat up to 90 degrees. She took off IT's coat, but left him in the car seat and placed a blanket on him. Respondent fell asleep and did not awake until the following morning. By this time, IT had died of dehydration. The coroner ruled the death accidental, but found that it was the result of gross negligence.

After IT's death, a safety plan was put in place. AT and ET began living with their father, and respondent was not allowed to see the children without his supervision. However, on February 4, 2014, DHHS learned that respondent had poured undiluted bleach on ET's shoulder

-1-

blade in a misguided attempt to treat a ringworm infection.[1]  Because respondent reported that she suspected both children had ringworm, DHHS instructed respondent to take the children to the hospital.  Respondent complied, and both children received medication.  DHHS filed a petition seeking termination of respondent's parental rights to AT and ET shortly thereafter. After an evidentiary hearing, the trial court terminated respondent's parental rights to AT and ET.

## II.  DISCUSSION[2]

### A.  STATUTORY GROUNDS

Respondent first argues that the trial court erred when it found statutory grounds existed to terminate her parental rights to ET and AT.  We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established."[3]  "We review for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence."[4] "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made."[5]

Termination of respondent's parental rights was appropriate pursuant to MCL 712A.19b(3)(b)(*i*).[6]  Termination is appropriate under this subsection if "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse [and] . . . [t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if

---

[1] The children's father was not present at the time, having left the children in the care of his girlfriend.

[2] Respondent has asked this Court to remand this matter to the trial court for clarification because the trial court did not address each subsection of MCL 712A.19b(3) individually.  We do not find a remand necessary.  The trial court stated its findings of fact and conclusions of law and included the statutory bases for its order.  We are satisfied that the trial court was aware of the relevant issues and correctly applied the law.  We need no further information to facilitate our review.  See MCR 3.977(H)(3); *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995).

[3] *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

[4] *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).  See also MCR 3.977(K).

[5] *Id*. (quotation marks, brackets, and citation omitted).

[6] Although the petition cited MCL 712A.19b(3)(b)(*ii*), the trial court did not specifically refer to this subsection.  Thus, we presume that the trial court did not rely on subsection (3)(b)(*ii*) when it reached its determination in this matter.

placed in the parent's home."[7]  There is no doubt that siblings of ET and AT suffered physical injuries.  Two of their siblings died while in respondent's care.  While it is unclear exactly what caused JT's death, IT's death was clearly caused by respondent having overheated her apartment and then falling asleep.  Further, ET was chemically burned by respondent when she poured undiluted bleach on his shoulder.  IT's death and ET's chemical burn also occurred in the recent past and after DHHS had intervened and provided respondent with resources.  Under the circumstances, the trial court did not clearly err when it found that there was a reasonable likelihood of injury to ET and AT if returned to respondent's care.

Respondent argues that the deaths of her children and the bleach incident with ET should not be considered under this subsection because her conduct was merely negligent, and that she did not intend to cause harm.  Respondent relies on *In re LaFrance*,[8] in which this Court found that the types of physical injuries contemplated by MCL 712A.19b(3)(b) must be "caused by a parent's act . . . and not merely contributed to by an unintentional omission."[9]  However, unlike the respondent father in *LaFrance*, respondent here did not simply fail to respond to an accidental injury or naturally occurring medical condition.  Uncontroverted evidence established that respondent caused IT's death by turning the heat up to 90 degrees and leaving him in a car seat for 11 hours.  The evidence also established that she caused ET's chemical burn, not by failing to respond to his ringworm, but by actively pouring bleach on him based on advice she obtained from the internet.  *LaFrance* does not support respondent's position.

Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights,"[10] this Court need not consider the remaining statutory grounds cited by the trial court.  However, we agree with the trial court's conclusions regarding the remaining statutory grounds.  While the evidence tends to show that respondent did not intend to injure or kill her children, the fact remains that her conduct caused the harm that occurred.  The circumstances of this case clearly and convincingly demonstrated that respondent, "without regard to intent, fail[ed] to provide proper care or custody" of ET and AT "and there is no reasonable expectation that [respondent] will be able to provide proper care and custody within a reasonable time considering [ET and AT]'s age."[11]  The evidence also clearly demonstrated that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child[ren]'s parent, that the child[ren] will be harmed if . . . returned to the home of the

---

[7] MCL 712A.19b(3)(b)(*i*).

[8] *In re LaFrance*, 306 Mich App 713; 858 NW2d 143 (2014).

[9] *Id*. at 725 (quotation marks omitted).

[10] *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

[11] MCL 712A.19b(3)(g).

-3-

parent."[12]  The evidence also established that respondent "abused the child or a sibling of the child and the abuse included" both "severe physical abuse" and "life threatening injury."[13]

## B. BEST INTERESTS DETERMINATION

Respondent next argues that the trial court erred when it found termination of her parental rights was in the best interests of her children.  We disagree.

Once a statutory ground has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights.[14]  This Court reviews a trial court's decision regarding whether termination of parental rights is in a child's best interests for clear error.[15]  Whether termination is in the children's best interests must be proven by a preponderance of the evidence.[16]  In considering whether termination of parental rights is in the best interests of the child, "the court should weigh all the evidence available to determine the children's best interests."[17]  These factors include the existence of a bond between the child and the parent, the parent's ability to parent, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with his or her service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption.[18]

Respondent argues that the trial court clearly erred by not explicitly addressing why termination was necessary in light of the fact that the children were placed with their father.  Placement of a child with a relative " 'weighs against termination under MCL 712A.19a(6)(a),' " and must be considered as part of the best interest determination.[19]  However, the term "relative" as used in MCL 712A.19a does not include the child's other parent.[20]  Therefore, the trial court

---

[12] MCL 712A.19b(3)(j).

[13] MCL 712A.19b(3)(k)(*iii*) and (*v*).

[14] MCL 712A.19b(5).  See also *Moss*, 301 Mich App at 86.

[15] *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

[16] *Moss*, 301 Mich App at 90.

[17] *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

[18] *Id*. at 713-714.

[19] *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012), quoting *Mason*, 486 Mich at 164.

[20] The term "relative" is statutorily defined, and includes only those related to the child "as grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above, even after the marriage has ended by death or divorce."  MCL 712A.13a(1)(j).

in this case did not need to explicitly consider the children's placement with their father in determining their best interests.

Nor did the trial court err in finding that termination was in the children's best interests. Two infants had died in respondent's care, AT had been medically neglected and failed to thrive, and ET received second-degree burns when respondent poured undiluted bleach on his skin. ET stopped acting out and improved in his school work when he moved from respondent's home to that of his father. Although there was evidence that the children shared a bond with respondent, the testimony of case workers was that the children were happy living with their father and did not want to return to respondent's home. There was testimony that the children would be harmed if they were cut off from respondent entirely, but their father made it clear that he would ensure that his children had a relationship with respondent. The trial court did not clearly err in holding that termination was in the best interests of each child.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, respondent argues that she received ineffective assistance of counsel because her court-appointed attorney failed to file a jury demand. As this Court has explained:

> The juvenile court is required to appoint an attorney for the child in child protective proceedings. Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings.
>
> To prevail on this claim of ineffective assistance of counsel, [respondent] must show that her trial counsel's performance was deficient, i.e., she must "show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced" her that it denied her a fair trial. This necessarily entails proving prejudice to [respondent], which means that there is "a reasonable probability that, but for counsel's unprofessional errors, the result would have been different."[21]

Respondent fails to show that her counsel's performance fell below an objective standard of reasonableness, much less that she was prejudiced as a result. In child protective proceedings, a respondent is only entitled to a jury during the adjudicative phase.[22] In this case, the record shows that respondent decided to forego the adjudicative phase by willingly submitting to the court's jurisdiction. Because respondent submitted to the court's jurisdiction, there was no need for counsel to request a jury. Nor has respondent demonstrated a reasonable probability of a

---

[21] *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2001), overruled on other grounds *In re Sanders*, 495 Mich 394 (2014).

[22] *Sanders*, 495 Mich at 406. See also MCR 3.911(A).

different result had such a request been made. Under the circumstances presented, the trial court clearly had jurisdiction over the children.[23] Respondent has not demonstrated that she received ineffective assistance of counsel.

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood

---

[23] See MCL 712A.2(b)(1) and (2). Respondent argues only that a Genesee County jury may have refused to find jurisdiction out of sympathy. This suggestion is no more than speculation. Moreover, the argument is based entirely on facts not apparent in the record. Because respondent failed to preserve her claim of ineffective assistance of counsel, our review is limited to the existing record. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).